NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0664n.06

No. 10-5060

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Sep 09, 2011**
LEONARD GREEN, Clerk

| | |
|---|---|
| THE CADLE COMPANY II, INC., | ) |
| *Plaintiff-Appellant,* | ) ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| GASBUSTERS PRODUCTION I LIMITED PARTNERSHIP, | ) O P I N I O N |
| *Defendant-Appellee.* | ) |

**BEFORE: WHITE and STRANCH, Circuit Judges; COHN, District Judge.**[*]

**AVERN COHN, District Judge.** This is an appeal of a bankruptcy court decision. Appellant The Cadle Company II, Inc. (Cadle), the primary unsecured creditor in a bankruptcy estate (estate), appeals a bankruptcy court's decision that Appellee Gasbusters Production I Limited Partnership (GPILP) has the ownership right to assert claims against the estate. GPILP's claims are based on agreements entered into between GPILP and estate debtor Clarence Lester Paul (Paul) relating to the operation and management of 15 gas and oil wells (wells).

For the reasons that follow, the bankruptcy court's decision will be affirmed.

**I. BACKGROUND**

The estate whose assets are now at issue was formed when, on February 6, 2004, Paul and his wife Margaret S. Paul (Mr. and Mrs. Paul) filed a Chapter 7 bankruptcy petition. Two years after

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

the bankruptcy petition was filed, GPILP filed a proof of claim against the estate in the amount of $424,825.00, in order to recover from what GPILP asserts was a breach of contract by Paul for failing to operate and properly manage gas wells. At the same time, GPILP moved for payment of gas-sale proceeds in the amount of $25,659.33, which GPILP asserts it was entitled to because the proceeds were earned during a period of time in which it had an ownership right – between settlement of a separate claim against GPILP, described below, and Mr. and Mrs. Paul's bankruptcy petition. Cadle subsequently purchased most of the assets of and rights in the Paul estate.

Cadle filed an objection to GPILP's proof of claim and motion for gas-sale proceeds with the bankruptcy court.[2] As to the proof of claim, Cadle contended that GPILP was not entitled to recover from the estate because it did not have an ownership interest in the wells, primarily because of claimed deficiencies in the well-transfer agreements. Cadle also argued that GPILP used an arbitrary methodology when it calculated the proof-of-claim amount. Finally, Cadle maintained that the amount needed to be further reduced to account for certain expenses and offset items owed by GPILP to Paul.

The bankruptcy court held an evidentiary hearing to aid in its resolution of the parties' motions. Following the hearing, Cadle's objections were overruled and GPILP was awarded claims against the estate and gas-sale proceeds, but for a reduced amount: $312,239.50 for the proof of claim, and $20,861.15 in gas-sale proceeds. With regard to the proof-of-claim amount, the

---

[2]The objection was made to an amended proof of claim, filed by GPILP in response to the estate's trustee objection that the original claim was unliquidated. The fact that the objection was made to an amended proof of claim has no bearing on the present appeal.

- 2 -

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

bankruptcy court rejected Cadle's argument that the claim needed to be even further reduced because of the various expense offsets, finding that Cadle failed to provide credible evidence concerning their existence and amount.

On appeal, a district court affirmed the bankruptcy court's decisions. Cadle appeals. We review the bankruptcy court's decision directly, rather than the district court order. *Nuvell Credit Corp. V. Westfall*, 599 F.3d 498, 500 (6th Cir. 2010).

## II. DISCUSSION

### A. Proof of Claim

Cadle argues on several grounds as follows that the bankruptcy court erred in finding that GPILP had an ownership interest to assert a proof of claim against the estate.

#### 1. Judicial Admissions

First, Cadle says that the bankruptcy court erred during the evidentiary hearing when it decided a *motion in limine* in favor of GPILP, which allowed statements made by Cadle in a prior adversary proceeding to be treated as judicial admissions, rather than evidentiary admissions. The statements involve allegations by Cadle that Paul concealed wrongful business activities using alter-ego entities,[3] and the decision effectively prevented Cadle from arguing that GPILP's proof of claim against the estate was invalid on the ground that it should have been made against the alter-ego

---

[3]Paul is now deceased. The alter-ego allegations involved Paul's operation of several businesses, including Bluegrass Drilling, Delstar Resources, Heritage Properties, The Viking Group, Energy Managers, and others.

- 3 -

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

entities and not Paul. We review a grant of a motion in limine for an abuse of discretion. *United States v. Humphrey*, 608 F.3d 955, 957 (6th Cir. 2010).

It is well established in our circuit that "'[p]leadings in a prior case may be used as evidentiary admissions.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (quoting *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1986)).

Judicial admissions, on the other hand, are formal admissions in the pleadings of a present action, "which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Eng' Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982). "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Ferguson v. Neighborhood Hous. Servs., Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) (citation and quotation marks omitted). "Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Id.* (citation omitted).

Further, admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and cannot be challenged in the trial court or on appeal. *Maynard v. Brewer*, 787 F.2d 591(6th Cir. March 4, 1986) (table order) (holding that a "blatant judicial admission by a plaintiff in his deposition that a jailer did not assault him, absent exceptional circumstances . . . [was] binding on the parties").

Here, in support of its *motion in limine*, GPILP provided the bankruptcy court with an amended complaint from a prior adversary proceeding, which contained the statements that were treated as judicial admissions. GPILP also provided deposition testimony from the present

- 4 -

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

bankruptcy court proceeding, in which a Cadle representative confirmed the statements as true and a Cadle attorney stipulated to their truth.

> The bankruptcy court's written decision granting the motion states:
>
> On the motion filed by [GPILP] seeking an order deeming the allegations of fact, including mixed statements of law and fact, in pleadings and papers filed by [Cadle] in adversary no. 06-AP-3003 as judicial admissions of Cadle for purposes of this bankruptcy case, and the Court being sufficiently advised, it is hereby ORDERED that the motion is GRANTED. No evidence will be admitted at the upcoming evidentiary hearing(s) for the purpose of contradicting the assertion that the bankruptcy estate is liable for any lawful claim against the debtors individually or d/b/a any Paul Family Entity (a) which claim existed on the date of filing of the petition, (b) for which a proof of claim has been timely and properly filed in this case, and (c) that the Court by subsequent order may deem to be allowed.

(Bankr. Ct. Doc. 630).

As stated, Cadle argues that the statements at issue should have been treated as evidentiary admissions rather than judicial admissions, in order to allow Cadle to present additional evidence in support of its defense that other entities and not Paul are liable to GPILP. In support, Cadle relies on *Dixie Sand & Gravel Corp. v. Holland*, 255 F.2d 304 (6th Cir. 1958), in which this court held that "[a]llegations in pleadings in other actions are admissible in evidence as admissions, but are not conclusive, and should be considered in connection with any other evidence which may be offered in explanation." *Id.* at 310 (holding that an allegation from a prior state court case was not binding on the appellant, even though it was contradictory to the appellant's present contention).

In response, GPILP argues that the bankruptcy court's decision to treat the statements as judicial admissions was proper. In support, GPILP cites *Cananwill, Inc. v. EMAR Group, Inc.*, 250 B.R. 533 (M.D.N.C. 1999), for the proposition that factual assertions made by parties in pleadings

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership* filed in related adversary proceedings, unless subsequently amended, are judicial admissions. *Id.* at 545. GPILP further argues that there is no error in the bankruptcy court's decision because similar statements – or statements confirming the truth of the prior statements – were made in papers and depositions on the present bankruptcy court's record. For example, GPILP points to Cadle's Responses to GPILP's First Interrogatories to Cadle, (Bankr. Ct. Doc. 418, pp. 9-10), filed in the present bankruptcy court action, in which Cadle states:

> To the extent that the Paul Family Children's "argument" rests on the hotly contested assertion . . . that they, not the Debtors, are the actual owners of a series of real and imagined corporate entities that the Debtors have treated as their alter egos for decades, Cadle is fully prepared to "take the Pepsi® Challenge. . . ." The Objections filed by the Paul Family Children and the Debtors reveal that both are concerned that the Settlement Agreement will compromise the elaborate fraud that they have perpetrated first through years of abuse of the corporate form and utilization of fictional business entries . . ., which represents nothing more than an attempt to shield the Debtors assets from creditors . . . . [I]t is understandable that anyone with the Paul surname should take note of the storm clouds on the horizon because a dust-up is coming over which business interests and other property are actually assets of the Debtors' Estate. . . . If these business entities actually belong in the Debtors' Estate, as Cadle intends to prove. . . .

(Bankr. Ct. Doc. 312, pp. 5, 11-12, 14). GPILP also cites to Cadle's Responses to GPILP's First Interrogatories to Cadle, also filed in this bankruptcy case, in which Cadle states:

> Yes, Cadle has contended in this case or in related adversary proceedings that [Mr. and Mrs. Paul] were individually liable for the obligations of or claims against Bluegrass, Delstar, Heritage, and/or Energy Managers. For a full and complete explanation of the factual basis for that contention, see the following pleadings and filings in *The Cadle Company II, Inc. v. Paul, et al.*, Case No. 06-3003.[4]

(Bankr. Ct. Doc. 497, pp 9-10).

---

[4]*The Cadle Company II, Inc. v. Paul, et al.*, Case No. 06-3003 is the related adversary proceeding referred to in the parties' arguments.

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

Finally, GPILP cites to deposition testimony given during the present bankruptcy court proceeding – and also attached to its *motion in limine* reply brief – in which a Cadle representative, Pete Barta (Barta) – speaking on behalf of Cadle – was asked, "Cadle has contended in this case or in related adversary proceedings that the debtors were individually liable for the obligations of or claims against Bluegrass, Delstar, Heritage and/or Energy Managers. Is that still true?" (Bankr. Ct. Doc. 623, Ex. 1, p. 24). After resolving objections to the form and Barta's recollection of the issue, Barta responded, "I believe the allegations are true . . . I believe today those allegations are true." (*Id.* at 26.).[5]

As an initial matter, GPILP's argument that *Cananwill, Inc.*, *supra*, resolves the issue is unpersuasive, as it is not binding in this circuit. Similarly unpersuasive is GPILP's argument that the statements made in Cadle's Responses to GPILP's First Interrogatories to Cadle, (Bankr. Ct. Doc. 418, pp. 9-10), and Cadle's Response to an Objection to a Motion for Approval of Sale of Estate Property, (Bankr. Ct. Doc. 312), defeat Cadle's argument, as it is not clear from the record whether the bankruptcy court relied on either document when it made its decision. In other words, while it is true that both documents are part of the bankruptcy court's record, we cannot discern whether the bankruptcy court relied on these statements, or solely on the amended complaint from the prior adversary proceeding.

Moreover, Cadle's assertion that the bankruptcy court erred when it relied on the statements from the prior adversary proceeding's amended complaint in making its decision has merit.

---

[5]In the same deposition, Cadle's counsel stipulates to the belief that the allegations in the prior adversary proceeding's amended complaint were true. (*Id.* at 30).

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

Particularly, precedence in this circuit dictates that if the bankruptcy court treated the statements as judicial admissions based solely on pleadings from a prior action, this was an error. *See e.g.*, *Barnes*, *supra*, at 829 (holding that "[p]leadings in a prior case may be used as evidentiary admissions").

However, in this case, the record demonstrates that the bankruptcy court relied not only on the statements from the prior action, but also on Barta's deposition testimony given during the present bankruptcy court action. Thus, to the extent that the bankruptcy court erred in considering statements made in the prior adversary action, the error was harmless.

Accordingly, because the bankruptcy court did not rely solely on the prior action's pleadings in making the decision, but at a minimum relied also on an admission by a Cadle representative during a deposition in the bankruptcy proceeding before it, we cannot find that the bankruptcy court abused its discretion. *See Maynard*, *supra*, *1.

### 2. GPILP's Ownership Interest

Next, Cadle presents several additional arguments to support its position that the bankruptcy court erred in finding that GPILP has a valid ownership interest in the wells.

#### a. Formation and Well Transfer Documents

First, Cadle argues that the GPILP formation documents and well-transfer agreements on which GPILP relies to assert its ownership interest are deficient. Particularly, Cadle states that the documents contain grammatical errors and name inconsistencies, which render them unenforceable by GPILP because they were never corrected. In response, GPILP argues that the documents are valid and enforceable under Kentucky law. Thus, despite any deficiencies, GPILP argues that it is

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

the rightful transferee, which is sufficient to justify its proof of claim against the estate. As with contracts, this Court reviews the district court's construction of these documents as a matter of law de novo. *See e.g., Weimer v. Kurz-Dasch, Inc.*, 773 F.2d 669, 671 (6th Cir. 1985).

As stated by the bankruptcy court, because this is a real property issue, Kentucky law governs. Under Kentucky law, when construing a deed or assignment, as with any other contract, the court's primary object is to discover the intent of the parties through a fair examination of the document as a whole. *Babb v. Dowdy*, 17 S.W.2d 1014, 1016 (Ky. 1929). "In modern times form has largely yielded to intention, and a deed is now held to consist of the names of the parties, the consideration, a description of the subject granted, the quantity of the interest conveyed, and the conditions, reservations or covenants, if any." *Id.* Further, "[i]t has long been the rule in [Kentucky] . . . to uphold deeds as other contracts, however informally they may be drawn, when the terms are sufficient to express the intention of the parties." *Id.* "[A]nd to this end a liberal construction is given a deed inartificially and untechnically drawn; the construction to be given such a deed and the intention of the parties to it is to be gathered from a fair consideration of the entire instrument." *Id.*

Further, where there is ambiguity and/or mutual mistake, Kentucky law says that a court may look beyond the four corners of the document in question to resolve the same. *See, e.g.*, *Ingram v. Ingram*, 283 S.W.2d 210, 212 (Ky. 1955) (parol evidence admissible to construe deed upon allegation of mutual mistake); *Senters v. Elkhorn & Jellico Coal Co.*, 145 S.W.2d 848, 850 (Ky. 1940) (parol evidence admissible to prove allegation of mutual mistake); *Virginia Iron, Coal & Coke Co. v. Combs*, 177 S.W. 238, 238 (Ky. 1915) (parol evidence admissible where ambiguity in deed

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

is latent, not apparent from face of instrument); *Day v. Asher*, 132 S.W. 1035, 1036 (Ky. 1911) (ambiguity in deed shown by extrinsic facts may be resolved by extrinsic evidence).

Cadle's argument that the GPILP formation and well-transfer agreements are deficient requires a brief description of the documents. With respect to the GPILP formation documents, they consist of a Limited Partnership Agreement (Agreement) and a Certificate of Limited Partnership (Certificate). The Agreement describes that William Polan (Polan) formed a Florida limited partnership by the name of Gasbusters Production I for the stated purpose of "direct[ing] the Sales, Drilling, Outfitting, Production of Natural Gas and acquiring the assets of Appalachian Natural Gas . . . and certain oil and gas ownership interests of Quintana Coal Co. . . ." The Certificate describes that 17 days after executing the Agreement Polan created an entity by the name of Gasbusters Production I Limited Partnership. Both the Agreement and the Certificate name the initial general partner of GPILP as Gasbusters, Inc., a Kentucky corporation, and the initial limited partner as KY-Gasbusters, Inc., a Kentucky corporation. Both documents list the location of the partnership's principal office as Palm Beach, Florida, and the business office in Paintsville, Kentucky. However, the partnership name used in the documents varies – Gasbusters Production I compared to Gasbusters Production I Limited Partnership. Further, the Agreement expressly provides that the partnership's business "may be conducted under any other name deemed necessary or desirable by the General Partner." Both the Agreement and the Certificate contain several grammatical and typographical errors.

As for Polan's involvement with the well properties, in April of 1994, Raymond R. Burgess (Burgess) and Corbin J. Robertson and his family (collectively the Robertsons) – the original owners

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

of the property on which the wells are located – transferred their interests in the wells to Polan and GPILP entities. The undisputed transfers were executed via five documents, as follows:

> (1) Purchase and Sale Agreement: selling the 15 Burgess wells to Gasbusters Limited Partnership for $307,000.00 (Bankr. Ct. Doc. 691-5);
>
> (2) Assignment of Interest of Quitclaim and Sublease Surrender Agreement: assigning all of the interest in the 15 Burgess wells to Gasbusters, Inc. for $10.00 (Bankr. Ct. Doc. 691-6);
>
> (3) Assignment of Lease: assigning remaining interests in the wells from the Robertsons to Gasbusters Limited Partnership I, acting through Gasbusters, Inc. (Bankr. Ct. Doc. 691-7);
>
> (4) Deed of Oil and Gas Rights: conveying oil and gas mineral rights from the 15 Burgess wells to GasBusters Partnership I, acting through Gasbusters, Inc., for $200,000.00 (Bankr. Ct. Doc. 691-10);
>
> (5) Deed: conveying oil and gas mineral rights from the 15 Burgess wells to Gasbusters Partnership I, acting through Gasbusters, Inc., for $50,000.00.

(Bankr. Ct. Doc. 691-9).

As for Polan's involvement with Paul, on February 13, 1996, Polan, in his capacity as president of GPILP, and Paul entered into two agreements. In the first agreement, titled "Assignment and Deed of Oil and Gas Rights," Paul – through Delstar Resources – purchased an oil and gas property from Polan and Gasbusters Limited Partnership I for $10.00. The second agreement was an operating agreement entered into by Paul – this time doing business as Bluegrass Drilling – and Polan individually and as the managing general partner for Gasbusters Limited Partnership I. Under the second agreement, Paul was employed to manage 15 wells owned by Polan and Gasbusters Limited Partnership I. As compensation for his services, Paul was to receive $1,500.00 per month

- 11 -

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

plus expenses to be deducted from gas-sale proceeds. At some point thereafter, Paul began operating and managing the wells.

Based upon the above described formation documents and well-transfer agreements, the bankruptcy court found it "abundantly clear that the Well Transfer Documents served to transfer ownership of the wells in question to GPILP." (*See* Bankr. Ct. Doc. 710, *supra*, at 10). Particularly, the bankruptcy court held that overwhelming evidence, including the following, demonstrated that GPILP had owned the wells since 1994:

> (1) a name similar to "Gas[b]usters Production I Limited Partnership" is listed as grantee on four of five well transfer documents;[6]

---

[6]Cadle places much emphasis on the fact that one of the five well-transfer agreements, the Assignment of Interest of Quitclaim and Sublease Surrender Agreement, assigns all interest in the Burgess wells to "Gasbusters, Inc." alone. Contrary to the other four agreements, this document does not indicate that Gasbusters, Inc. is acting in an agency role for another "Gasbuster Partnership" entity. Cadle argues that since the four other documents expressly reference Gasbusters, Inc. as acting *in an agency role*, the parties must have intended to designate Gasbusters, Inc. as the sole assignee on this particular agreement. Cadle argues that the agreement is unambiguous on its face and that, faced with an unambiguous document, the bankruptcy court clearly erred in considering evidence beyond "the four corners" of that document (such as the purpose of GPILP's formation, the amount of money involved in transferring the wells, etc.). *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000) ("Extrinsic evidence cannot be admitted to vary the terms of a written instrument in the absence of an ambiguous deed."). This argument is not altogether unpersuasive, but it ignores the fact that "[c]ontract language . . . may be clear on its face and yet contain a latent ambiguity." *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (citation omitted). "A latent ambiguity is one which does not appear upon the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts." *Carroll v. Cave Hill Cemetery Co.*, 189 S.W. 186, 190 (Ky. Ct. App. 1916) (quoted in *Slusher*). In this case, the latent ambiguity is exposed when the *Assignment of Interest of Quitclaim and Sublease Surrender Agreement* is "brought in contact" with the four other well-transfer documents, all of which reference Gasbusters, Inc. as the agent of a Gasbuster Partnership entity. Arguably, the bankruptcy court could have found the *Assignment of Interest of Quitclaim and Sublease Surrender Agreement* unambiguous on its face; however, it was not clear error to hold otherwise.

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

> (2) GPILP was formed expressly for the purpose of acquiring the wells;
>
> (3) the well transfers, which totaled approximately $550,000.00 in consideration, occurred shortly after new limited partners joined GPILP and contributed approximately $700,000.00; . . .
>
> (5) no party other than Cadle has ever come forward to challenge GPILP's ownership interest in the wells; and
>
> (6) no evidence was submitted that GPILP transferred away its ownership interests in the wells.

(*Id*. at 10-11).

We find the bankruptcy court's analysis to be sound. That is, a fair consideration of the instruments in their entirety demonstrate that GPILP was the intended transferee and transferor of the wells, such that it had standing to assert a proof of claim against the estate. *See Babb*, *supra* ("[A] liberal construction is given a deed inartificially and untechnically drawn; the construction to be given such a deed and the intention of the parties to it is to be gathered from a fair consideration of the entire instrument."). As such, we affirm the bankruptcy court's determination that GPILP had an ownership interest to assert the claims against the estate.

### b. Settlement Agreement

Cadle next argues that the bankruptcy court erred when it relied on a settlement agreement from a separate lawsuit as further support that GPILP has an ownership interest in the wells. The lawsuit was instituted by Burgess and his company Appalachian Natural Gas Corp. (ANG) against Polan, Gasbuster, Inc. and GPLIP, claiming that GPILP had defaulted on the well-transfer agreements described above. The parties ultimately reached a settlement in September of 1999. The settlement agreement provided that Burgess and ANG would release all claims against GPILP in

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

exchange for "the sum of $35,000.00 in cash from escrow fund disbursed to [counsel for GPILP] by the Lawrence Circuit Court Clerk" pursuant to the order and judgment." Additionally, Burgess, ANG, and Paul entered into a separate release and settlement agreement, in which Paul, on behalf of himself and his assigns, also agreed to pay Burgess $35,000.00 in exchange for an agreement of dismissal of the case with prejudice. The case was dismissed by an agreed order and judgment, entered on December 21, 1999. The order and judgment provides in pertinent part:

> 6. Upon the oral Motion of [GPILP] for a Default Judgment on its Crossclaim against William J.M. Pol[a]n and others, it is ORDERED AND ADJUDGED that all persons, other than the Lessors under the Lease, Bluegrass Drilling Corporation and Delta, who claim to have liens, encumbrances, mortgages or security interests in and to the property of [GPILP], or claims of rights to payments from [GPILP], are VOID, TERMINATED AND/OR EXTINGUISHED. . . .
>
> 10. All other claims, counterclaims and crossclaims asserted in this action should be and hereby are, DISMISSED WITH PREJUDICE.

(Bankr. Ct. Doc. 685-1).

The bankruptcy court determined that the language in the settlement agreements and subsequent dismissal order was persuasive insofar as it provided further evidence of GPILP's ownership interest as recognized by Paul and Burgess – the transferors – as well as the adjudicating court. *(*Bankr. Ct. Doc. 710, p. 11 (finding that "the Lawrence Circuit Court Litigation shows that the parties to th[e] litigation . . . considered GPILP the transferee of the property in question . . . and [that] the Lawrence Circuit Court expressly found and actually adjudicated in favor of GPILP vis a vis [] Polan and [GPILP] concerning the power to assert claims with regard to the property.")).

The bankruptcy court properly considered all these documents in resolving the ambiguity created by the use of various titles for DPILP. Kentucky law permits a court to look beyond the four

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

corners of a document in the case of ambiguity and/or mutual mistake. *See Ingram*, *supra*, at 212; *Senters*, *supra*, at 850; *Va. Iron*, *supra*, at 238; *Day*, *supra*, at 1036. Accordingly, the bankruptcy court did not err in determining that the settlement agreement supported its finding relating to GPILP's ownership interest.

### 3. Proof-of-Claim Amount

Cadle next argues that even if the Court determines that GPILP has an ownership interest, the bankruptcy court further erred in its calculation of the proof-of-claim amount and in its determination that further reductions to the claim amount were not warranted.

The bankruptcy court's decision sets forth how it approached the task of calculating an accurate amount:

> Having determined that GPILP has the right and standing to assert its Proof of Claim, the Court must consider the amount of GPILP's claim, which derives from the alleged production and sale of natural gas from the wells owned by GPILP.
>
> The gas field at issue here contains a total of 18 natural gas wells connected to two pipelines lines, each of which ends in a meter near a compressor where the gas is compressed, measured and then enters into a large gas transmission line for sale and distribution. Each well is surrounded by approximately 40 acres of land. The northern pipeline (Meter No. 824440) contains eleven wells, and GPILP makes no claim of ownership to one of those wells (Robertson No. 2). The southern pipeline (Meter No. 830110) contains seven wells, and GPILP makes no claim to two of those wells (Robertson Nos. 6 & 7). The parties produced extensive production records; however, they are all referenced by meter not by well. Since each meter is at the end of the pipeline, the challenge is ascertaining how much of the gas flowing through the two meters originates from wells to which GPILP makes a claim and how much comes from others (the "Non-GPILP Wells").

(Bankr. Ct. Doc. 710, p. 12).

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

Using this methodology, the bankruptcy court next considered evidence produced by both GPILP and Cadle, in the form of expert testimony and well production data, in order to determine how much gas came from GPILP's wells, which would then allow the court to determine how much GPILP was owed. *Id.* at 12-15. After analyzing all of the evidence, the bankruptcy court adjusted GPILP's amended proof of claim down to $312,239.50. *Id.* at 15. Next, relating to Cadle's argument for additional reductions, the bankruptcy court found that further offsets to account for amounts claimed to be owed to Paul by GPILP were not warranted because Cadle "failed to provide any credible evidence concerning the existence and, more importantly, the amount of such 'offsets.'" *Id.* at 16.

Contrary to Cadle's argument, the record demonstrates that the bankruptcy court thoroughly analyzed the evidence produced by both GPILP and Cadle in arriving at its claim-amount decision. Thus, reversal is not warranted on these grounds. Further, Cadle fails to provide authority for its argument that the bankruptcy court erred in finding that the offset evidence was not credible. Indeed, in its brief, Cadle "does not dispute the fact that some of the entries on its expense-documentation exhibits do not represent proper offsets against [GPILP's] claim." (Appellant's Brief, p. 67). Rather than providing accurate offsets to the bankruptcy court, Cadle seemingly left it to the bankruptcy court to compile accurate figures. (*Id.* at 67-68). Particularly, Cadle states that it "did not see any need . . . to prepare a spreadsheet of these expenses in its Post-Trial Brief because of its belief that the Bankruptcy Court would correctly resolve the standing issue and never reach the question of offsets." (*Id.*). In other words, without authority for the proposition, Cadle maintains that the

No. 10-5060, *The Cadle Company II, Inc. v. Gasbusters Production I Limited Partnership*

bankruptcy court should have on its own calculated the offset amounts that Cadle failed to provide rather than finding that the amounts that Cadle provided were not credible.

Cadle's argument lacks merit. The bankruptcy court was under no obligation to determine any offsets that Paul may have been entitled to. Accordingly, based on the above, the bankruptcy court did not err in determining GPILP's claim amount.

### B. Gas-Sale Proceeds

Finally, Cadle appeals the bankruptcy court's order granting GPILP's motion for $20,861.15 in gas-sale proceeds during the time between the previously described settlement and Mr. and Mrs. Paul's bankruptcy petition. Particularly, Cadle argues "[b]ecause of the substantial factual and legal overlap" between GPILP's amended proof of claim and its motion for payment of gas-sale proceeds, "the reversible errors alleged above [] with respect to the former apply equally to the [b]ankruptcy [c]ourt's decision-making process as to the latter." (Appellant's Brief, p. 68).

From what the Court can glean, Cadle's argument assumes a finding in its favor relating to GPILP's ownership interest in order to prevail. Fatal to this argument then is our agreement with the bankruptcy court that GPILP has a sufficient ownership interest to assert its claim. Moreover, Cadle fails to offer an alternate ground in support of its argument. Accordingly, the bankruptcy court's decision on this issue will be affirmed.

### III. CONCLUSION

For the reasons stated above, the bankruptcy court's decision is AFFIRMED.